UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

SAVANNAH-CHATHAM CO. FAIR HOUSING
COUNCIL,

    Plaintiff,

v.                406CV018

ALVIN L. DAVIS, INC.,

    Defendant.

## ORDER

### I. INTRODUCTION

The Savannah-Chatham County Fair Housing Council ("the Council") brought this action against Alvin L. Davis, Inc. ("Davis")[1] for disability discrimination in violation of federal and state fair housing laws. Doc. # 1 at 1. Davis designed, developed, and constructed the Mohawk Trail Townhomes without complying with the design and construction requirements of the Fair Housing Act (FHA), 42 U.S.C. § 3604(f)(3)(C). On cross-motions for summary judgment, the Court granted summary judgment to Davis on some of the Council's claims, and granted summary judgment to the Council on Davis's liability for other claims. Doc. # 40. The parties then settled on the issue of damages, and the Court entered a consent judgment. Doc. # 43. Part of the judgment noted that the Council was entitled to attorney's fees. The parties dispute the amount. Doc. ## 44, 47, 50.

### II. FACTUAL BACKGROUND

In 1998, the Council undertook an investigation of Mohawk Trail to determine whether the complex complied with fair housing laws.[2] To further the investigation, the Council hired an architect and accessibility consultant, in addition to a "tester" who was sent to Mohawk Trail to test accessibility. Upon completion of the investigation, the Council determined that Mohawk Trail was deficient in a number of respects. It contacted Davis with its findings.

The parties then made a nine-month effort to conciliate without litigation. Though notified of the violations, Mohawk Trail continued constructing noncompliant dwellings during the conciliation efforts. In an effort to address Davis's discrimination, the Council implemented an education and outreach plan, which included distributing educational literature at Mohawk Trail and preparing a television news report highlighting accessibility requirements imposed by federal law.

The parties stipulate to the following conclusions based on the investigation:

> 1. All single-story flats are at Mohawk Trail are covered multifamily dwellings within the meaning of 42 U.S.C. § 3604(f)(7).
>
> 2. Covered multifamily dwellings must

---

[1] Though Davis technically refers to the company Alvin L. Davis, Inc., for convenience the Court will reference this corporate defendant as "he" or "him."

[2] Except as otherwise noted, Davis stipulates to the facts and conclusions of law set forth by the Council. Doc. # 22 at 2 ("The Conclusions of Law as set out by the Plaintiff are admitted"). The facts are taken from the Council's Statement. Doc. # 17 at 11-15.

comply with the design and construction requirements of the [FHA], 42 U.S.C. § 3604(f)(3)(C).

3. Public use and common use portions of covered dwellings must be "readily accessible to and usable by handicapped persons." 42 U.S.C. § 3604(f)(3)(C)(i).

4. The public and common use portions of the covered dwellings at Mohawk Trail are not readily accessible to and usable by handicapped persons because the exterior doors lack usable hardware, thereby violating 42 U.S.C. § 3604(f)(3)(C)(i).

5. All doors into and within a covered dwelling must be "sufficiently wide to allow passage by handicapped persons in wheelchairs." 42 U.S.C. § 3604(f)(3)(C)(ii).

6. Doors into and within each of the covered dwellings at Mohawk Trail are not sufficiently wide to allow passage by handicapped persons in wheelchairs, thereby violating 42 U.S.C. § 3604(f)(3)(C)(ii).

7. Covered dwellings must have an accessible route "into and through the dwelling." 42 U.S.C. § 3604(f)(3)(C)(iii)(I).

8. There is not an accessible route into and through all of the covered dwellings at Mohawk Trail, thereby violating 42 U.S.C. § 3604(f)(3)(C)(iii)(I).

9. Covered dwellings must provide "light switches, electrical outlets, thermostats, and other environmental controls in accessible locations." 42 U.S.C. § 3604(f)(3)(C)(iii)(II).

10. The covered dwellings at Mohawk Trail do not provide electrical outlets and thermostats in accessible locations, thereby violating 42 U.S.C. § 3604(f)(3)(C)(iii)(II).

11. Covered dwellings must have "reinforcements in bathroom walls to allow later installation of grab bars." 42 U.S.C. § 3604(f)(3)(C)(iii)(III).

12. The bathroom walls in the covered dwellings of Mohawk Trail are not configured in a manner that would permit later installation of grab bars, thereby violating 42 U.S.C. § 3604(f)(3)(C)(iii)(III).

13. Covered dwellings must have "usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space." 42 U.S.C. § 3604(f)(3)(C)(iii)(IV).

14. The bathrooms in the covered dwellings do not provide sufficient space to permit an individual in a wheelchair to maneuver, thereby violating 42 U.S.C. § 3604(f)(3)(C)(iii)(IV).

Doc. # 17 at 15-17.

### III. PROCEDURAL BACKGROUND

In 2/05, the Council filed an FHA complaint against Davis with the United States Department of Housing and Urban Development ("HUD"). HUD then transferred the case to the Georgia Commission on Equal

2

Opportunity ("GCEO").[3] The GCEO attempted to conciliate the matter without success, so it brought an action against Davis in the Superior Court of Chatham County, Georgia: *State of Ga. v. Alvin L. Davis, Inc.*, C406-0158-MO (Complaint filed 1/25/06) (hereafter, *Davis*).[4] The action was brought through the Attorney General of the State of Georgia ("the State") and "on behalf of" the Council. The State sought an injunction (1) "to remedy the effects of [Davis's] discriminatory design and construction, and take steps to bring ... Mohawk Trail into full compliance with the [the law]"; (2) against future design and construction that violates disability law. It also sought $50,000 in civil penalties "to vindicate the public interest"; actual and punitive damages; and fees and costs. Doc. # 30, app. B at 7 (certified copy of state court complaint).

Unaware of the *Davis* filing, the Council filed the present action on 1/19/06, one week before the State filed the state-court action. Doc. # 1. In this action, the Council sought (1) compensatory damages for its efforts to stop Davis's discriminatory construction; (2) punitive damages because Davis acted "with oppression, fraud or malice"; (3) a declaration that Davis violated federal fair housing law; (4) an injunction against Davis's state and federal unlawful practices; an injunction requiring Davis "to take affirmative action to provide equal housing opportunities to all purchasers and prospective purchasers without regard to disability"; and (5) costs and attorneys' fees. Doc. # 1 at 7-8.

In 3/06, the Council learned from Davis that the State had filed *Davis* -- "on behalf of" the Council -- and that the State was in the process of settling with him. Doc. # 34 at 2. The Council then sent the State a letter noting that it never received notice of the *Davis* filing, nor a copy of the complaint. Doc. # 36 at 15. The letter alerted the State that a state-court settlement would be far inferior to the result achieved by the Council in this litigation, and requested that the State withdraw the state-court matter. *Id.* The Council received no response from the State. Doc. # 34 at 2.

On 8/21/06, the Council filed a Motion for Summary Judgment (MSJ) regarding defendant's liability in this Court. Doc. # 17. During the briefing period on the MSJ in this Court, the State and Davis agreed on terms for a final settlement of the state-court action. The Council was notified of the existence and terms of the agreement by fax on 9/15/06. Doc. # 34 at 4. Davis's response to the Council's MSJ in this Court was due by 9/13/06, but the Clerk of Court extended that deadline to 9/20/06. Doc. # 19. Thus, on 9/20/06 the MSJ was ripe for adjudication by this Court.

On 9/21/06 the Council filed a non-party objection to the Conciliation Agreement in the state court. Doc. # 26 at 3. The Council objected because (1) it was not advised that the Agreement had been reached; (2) it was not consulted on the terms of the Agreement; (3) it did not consent to an entry of the Conciliation Agreement; and (4) it did not authorize any

---

[3] Under 42 U.S.C § 3610(f)(3)(A), HUD may certify a state agency deemed "substantially equivalent" to enforce housing rights of that state's citizens. If a state has such an agency, for example the GCEO in Georgia, HUD refers complaints of discriminatory housing practices to it for processing. 42 U.S.C. § 3610(f)(1).

[4] Davis denies that conciliation attempts were unsuccessful, and points out that an agreement with the GCEO was subsequently made. However, a later agreement does not change the fact that initial attempts were unsuccessful, thus necessitating the filing of a lawsuit by the State.

3

action by the State "on its behalf." Doc. # 30, exh. A at 15-16. Despite the Council's objections to the State about the Agreement's inadequacy,[5] and despite its protestations to the state court about the lack of representation, that court adopted the Agreement as a final judgment on 9/21/06.

This Court then granted in part and denied in part each party's motion for summary judgment. Doc. # 40. It granted summary judgment to Davis, on *res judicata* grounds, on the Council's claims for punitive damages and injunctive relief. *Id.* But it also granted the Council summary judgment on its compensatory damages claim. *Id.* The parties then settled on the amount of compensatory damages and this Court entered a consent judgment for the Council. Doc. # 43. Pursuant to that judgment, the Council now moves for attorney's fees.

## IV. ANALYSIS

In a fair-housing, private-enforcement action, the Court has discretion, pursuant to 42 U.S.C. § 3613(c)(2), to allow the prevailing party a reasonable attorney's fee and costs. The consent judgment stipulated that the Council is entitled to "its reasonable attorneys' fees and costs" under this section. Doc. # 43 at 1.[6] The only remaining question, then, is what is reasonable.

---

[5] After HUD was notified of the settlement, it decided to reopen the federal investigation into Davis and review the "substantially equivalent" status of the GCEO. Doc. # 39, exh. 1; *see supra* note 2 (describing relationship between HUD and GCEO).

[6] Whatever the precise definition of "prevailing party," an issue currently before the Supreme Court, *see Wyner v. Struhs*, 179 Fed. Appx. 566 (11th Cir. 2006), *cert. granted sub nom, Sole v. Wyner*, 127 S.Ct. 1055 (2007) (oral argument held 4/17/07), obtaining summary judgment and a consent-judgment stipulation that reasonable attorney's fees are due entitles the Council to prevailing-party status.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Here, the Council provided substantial evidence supporting the hours worked and rates claimed by Christopher Brancart (121.7 hours x \$350/hour = \$42,595), Elizabeth Brancart (36.7 hours x \$350/hour = \$12,845), Liza Cristol-Deman (27.4 hours x \$275/hour = \$7,535), and John Paul Berlon (30.3 hours x \$150/hour = \$4,545). Doc. # 45, exhs. 1-6; doc. # 46, exh. 1. These attorneys' fees total \$67,520. In addition, the Council provided evidence of legal work performed by paralegals: Katja Thomas (31.7 hours x \$125/hour = \$3,962.50), Dena Reiner (8.5 hours x \$95/hour = \$807.50) and others (9.6 hours x \$50/hour = \$480). Doc. # 45, exhs. 7-11.

This Court is generally opposed to lawyers charging clients for the work of non-lawyers. The antipathy arises from the inherent inconsistency of allowing paralegal fees to be charged for "legal work," *Missouri v. Jenkins*, 491 U.S. 274, 288 n. 10 (1989), while Georgia law bars the unauthorized practice of law:

> (a) It shall be unlawful for any person other than a duly licensed attorney at law:
>
> \*   \*   \*   \*
>
> (4) To render or furnish legal services or advice;
>
> \*   \*   \*   \*
>
> (6) To render legal services of any kind in actions or proceedings of any nature....

4

O.C.G.A. § 15-19-51(a)(4), (6).

For that matter, the Council has not shown the Court, as is required by *Jenkins*, that attorneys in the relevant market -- here, Savannah -- bill for paralegal time. 491 U.S. at 288 ("Nothing in § 1988 requires that the work of paralegals invariably be billed separately. If it is the practice in the relevant market not to [bill for paralegals], or to bill the work of paralegals only at cost, that is all that § 1988 requires"). A recent Eleventh Circuit case illuminates another prerequisite:

> Here, Appellants included Ms. Barrett [-- a paralegal --] in the request for fees, stating she had extensive experience in database management; however, Appellants provided no details about Ms. Barrett's experience. The district court concluded, even though it could use its own expertise, it lacked the requisite knowledge to determine a reasonable hourly rate for Ms. Barrett. Therefore, it deducted her fees. Appellants asked the district court to give the rate of a paralegal with no experience. While within its discretion to do so, the district court is given wide discretion on when to use its expertise. Here, the Appellants had the burden to prove entitlement to the fees and failed to meet it. Therefore, we affirm the district court's deduction of Ms. Barrett's paralegal fees.

*U.S. v. Patrol Services, Inc.*, 202 Fed.Appx. 357, 363-64 (11th Cir. 2006). Here, likewise, the Council makes general assertions about its paralegals "significant experience," doc. # 45 at 11, but fails to provide the details required for the Court to determine a reasonable hourly rate. Therefore, like the *Patrol Services* court, this Court refuses to award these paralegal fees.

Of the total attorney's fees ($67,520), the plaintiff voluntarily cut 5% ($3,376) "to account for any unnecessary, excessive, or redundant work." Doc. # 44 at 7. The Council therefore asks for $64,144 in attorney's fees.

Davis's first argument challenges the accuracy of the Council's "useful starting point." He argues that the attorneys' "reasonable hourly rate" should be between $225 and $250 -- the local rate for attorneys of comparable skills, experience, and reputation. Doc. # 47 at 8-9. The Council responds that their attorneys are entitled to recover non-local (California) rates, and in any event, the local rate for attorneys of comparable skill, experience, and reputation is the same as the rate charged. Doc. # 44 at 14-15.

Initially, the Court agrees with Davis that $250 per hour represents a reasonable hourly rate in the Savannah area for attorneys of comparable skill, experience, and reputation. Indeed, local counsel in this case charged $150 per hour (doc. # 46 at 3; Council's counsel) and $175 per hour (doc. # 48 at 1; Davis's counsel). This stark disparity ($150 or $175 versus $350) impresses the Court that $350 per hour is not a reasonable rate for litigators in the Savannah area -- even those in highly specialized fields.

The Council's attorneys could still justify a $350/hour rate if they are entitled to charge non-local rates.[7] For that the Council "must show a lack of attorneys practicing in [the local area] who are willing and able to handle [the] claims." *ACLU of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999). The Council fails to meet its burden on this issue. Though the

---

[7] Davis does not challenge that $350/hour represents a reasonable rate for California, Bay-area attorneys. Doc. # 47 at 2.

5

Council presents affidavits from its Executive Director and various Savannah attorneys that no lawyers in the Savannah area have the California lawyers' level of expertise, and that no local attorneys independently take fair-housing cases, doc. # 47, exhs. 14-16, the Council also presents affidavits declaring that John Paul Berlon -- local counsel in this case (charging $150/hour) -- files fair housing cases. *Id.*, exh. 17-18 (exh. 17: "*Aside from John Paul Berlon*, I know of no other attorney in Chatham County practicing in this area"; exh. 18: *Aside from John Paul Berlon*, I know of no other attorney in Chatham County practicing in this specific area of law" (emphasis added in both)).

Furthermore, it is evident from Berlon's affidavit that he served the Council in a secondary role -- "responsible to appear as counsel in all hearings" (there were none); "must carefully and timely review ... all documents." Doc. # 46 at 4; *see also* doc. # 45 at 8-9. It is evident that the Council could simply have hired Berlon to take the lead in this case, avoiding higher out-of-market rates; it was unnecessary to bring in Bay-area blue-chippers. Thus, the Bay-area attorneys are entitled to the rate that lawyers of their expertise would command in Savannah -- $250 per hour, as discussed *supra*.

The new starting point can thus be calculated as follows: Christopher Brancart (121.7 hours x $250/hour = $30,425), Elizabeth Brancart (36.7 hours x $250/hour = $9,175), Liza Cristol-Deman (27.4 hours x $250/hour = $6,850), and John Paul Berlon (30.3 hours x $150/hour = $4,545) for a total attorney's fee of $50,995. That total minus $2,549.75 (5% of attorney's fees, using reasonable rate) leaves the reasonable starting point at $48,445.25.

Davis raises six arguments in favor of reducing the award from the established starting point. Doc. # 47. First, he argues that the fees are unreasonable in light of the Council's limited success in this litigation. In determining the amount of damages, the Court must take into account "the important factor of the 'results obtained.'" *Eckerhart*, 461 U.S. at 434. "This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *Id.* Davis argues that the Council's success in this case was limited because the damages award was limited to $5,187.75. Doc. # 47 at 3-4.

The Court disagrees. In deciding what attorney's fees are reasonable, the Court cannot view the litigation in a vacuum. The ends the Council sought to achieve were a legal declaration that Davis violated fair-housing laws, compensatory damages for the effort expended to force Davis to comply with the law, punitive damages for Davis's brazenness, and injunctive relief. Because of the detailed record created by the Council, Davis was essentially forced to admit wrongdoing both here and in the related state-court case.

In the end, the Council's pursuit of this case led to the achievement of all four goals. In this litigation the Council won summary judgment on the issue of Davis's liability under fair-housing laws,[8] plus a judgment on all of its compensatory damages. In the state litigation Davis was required to pay a punitive damages claim and remedy his housing violations. No one can say the same results would have occurred in state court without the pressure that

---

[8] The state-court settlement does not declare Davis in violation of the law. That settlement represents only the parties' "desire to compromise and settle this action solely to obviate the need for further litigation and attendant costs." Doc. # 26 at 5.

6

this case exerted on Davis. Furthermore, the Council would have had to proceed in the same manner in this case to recover its compensatory damage award whether or not state litigation was ongoing. The Court thus declines to reduce the fee award on the grounds of limited success.

Davis next moves to reduce the fee award because "there was very little to be done in this case. All of the key points were conceded." Doc. # 47 at 5. The Court rejects this argument. The key points were conceded because the Council, at substantial cost, developed a record and argument so devastating that it forced Davis to concede. Davis points to no attorney time expended on a conceded issue. *See* doc. # 45, exhs. 1-11.

Davis next argues that "[p]art of determining what is reasonable is determining what is right," and urges the Court to reduce the fee award based on equitable considerations. The equitable considerations Davis raises are that the suit was entirely duplicative of the state-court suit and that Davis "was informed during the permitting process by the City of Savannah that town homes were not subject to the accessibility requirements of the Fair Housing Act." Doc. # 47 at 7.

The Court rejects that argument, too. First, Davis cites no case law in support of his argument. Second, as described above, this litigation achieved relief beyond the state-court settlement and undoubtedly forced Davis to reach a settlement in the state-court action; it thus was not duplicative. Third, the Court sees little relevance in Davis's claimed justification for violating the fair-housing law (he claims the City told him it was "OK" to do so); the issue at this juncture is how much the Council expended to adjudicate an issue on which it prevailed.

Davis next argues that the fee award should be reduced because the Council's out-of-state attorneys "have purposefully developed a practice in Georgia and established a 'continuous and systematic presence' in the state" in violation of GA. R. PROF. CONDUCT 5.5. The allegation is based on the fact that, in addition to this case, the Council's lawyers have filed another action in this Court. Of course, filing two lawsuits can hardly be said to constitute a "continuous and systematic presence" in this state.

Davis argues, and the Council concedes, that time spent referring this matter to HUD should not be included in the fee award. Thus, the fee award must be reduced by $875, and the attorney fee is set at $48,445.25 - $875 = $47,570.25.

Finally, the Council seeks $723.25 in taxable and $1,272.07 in non-taxable costs. Davis argues that postage and computerized legal research cost are not recoverable under 28 U.S.C. § 1920. The Council correctly responds they are recoverable in civil rights cases. *Dowdell v. City of Apopka, Fla.*, 698 F.2d 1181, 1192 (11th Cir. 1983). The Council is therefore entitled to recover an additional $1,995.32, for a total award of $49,565.57.

## V. CONCLUSION

The motion (doc. # 44) of plaintiff Savannah-Chatham County Fair Housing Council for an award of fees and costs is ***GRANTED* and *DENIED* in part**. Doc. # 44. Alvin L. Davis, Inc. shall pay $49,565.57 in costs to the plaintiff.

This 30 day of April, 2007.

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA